May Term, 1851.

WILSON
v.
CASSIDY.

Wilson and Wife v. Cassidy and Others.

The complainants brought their bill stating that A., being the owner of certain land, deeded it to his son B.; that the latter took possession; that the deed not being recorded he re-delivered it to his father, by whom it was destroyed upon a promise to enter for him, in lieu of said land, a quarter section in Rush county; that it was never entered; that B. is dead; that the female complainant is his sole heir. The bill prays that the devisees of said land be decreed to execute a quit-claim deed therefor. The evidence showed that no deed was ever delivered to B.; and that before the marriage of the female complainant A. conveyed to her 160 acres of land in Rush county purporting to be for the consideration of love and affection. A decree was rendered for the defendants. Held, that the decree of the Court below was correct.

Friday, May 30.

APPEAL from the Fayette Circuit Court.

PERKINS, J.—Robert Wilson and Nancy his wife, brought their bill in the Fayette Circuit Court, stating that in June, 1819, one Phineas McCray, being the owner of fifty acres of land in Fayette county, Indiana, deeded the same to his son, Aaron McCray and his heirs; that Aaron took possession and made improvements; that, afterwards, not having procured his deed to be recorded, he re-delivered it to his father, by whom it was destroyed; that this was done upon a promise from the father to enter. for him, Aaron, in lieu of said fifty acres, a quarter section on Flat Rock, in Rush county; that the quarter section was never entered; that Aaron is dead, and said Nancy Wilson is his sole heir, and, therefore, entitled to said fifty acres by inheritance. The bill prays that the devisees of said land may be decreed to execute to said Nancy a quit-claim deed therefor. The devisees of Phineas McCray, he being also dead, are made parties.

Phineas Cassidy, one of said devisees, answered, not

admitting, but requiring proof of, the allegations in the bill. Depositions were taken, the cause heard, and a decree rendered for the defendants below.

It was proved that *Phineas McCray* verbally gave to his son, *Aaron*, fifty acres of land in *Fayette* county, of which *Aaron* took possession, and on which he made a small improvement, without at the time having any deed for the land. The evidence as to a deed having been subsequently executed is as follows: *Sarah McCray*, *Aaron's* mother, states that she remembers having gone to *Connersville* about spring, in 1819, with her husband, to acknowledge a deed for said fifty acres; the deed was acknowledged; dont know that it was ever delivered; dont recollect whether *Aaron* was present or not when the deed was acknowledged; saw him have it in his hand and look at it at his father's, but he did not take it away with him. About the 1st of *August*, 1819, *Aaron* went to *Rush* county, taking with him his wife and daughter, *Nancy*, then an infant under one year of age; and on the 23d of that month he died there. It had been agreed between him and his father, before he left, that the deed for the fifty acres should be destroyed; that he, *Aaron*, should select, in lieu thereof, 160 acres in *Rush* county, which should be entered for him by his father when it should come into market.

As to the destruction of the deed there is the following proof: *John McCray*, a brother of *Aaron*, testifies that " on account of a slander suit having been brought against *Aaron*, in the *Fayette* Circuit Court, he ran away to avoid the service of process upon him; his father informed witness, in the conversation he has before detailed, that he had destroyed said deed, and that in compensation he was to give *Aaron* a quarter section of land in *Rush* county, on *Flat Rock;* the understanding of the witness was that this agreement was made to prevent the land [in *Fayette* county] being made liable, as *Aaron's* property, in the slander suit."

In regard to the 160 acres in *Rush* county, it was proved that said *Phineas McCray*, in 1825, did convey by a deed

in fee, purporting to be for the consideration of love and affection, to said *Nancy Wilson*, then *Nancy McCray*, and her heirs, 160 acres of land in *Rush* county. *Nancy* was the sole heir of said *Aaron*. It was attempted to do away with the effect of this latter proof by showing that *Phineas* entered said 160 acres with money obtained from the guardian of said *Nancy's* estate, and from the sale of said *Aaron's* personal property. But the answer to this is that whatever money was obtained from those sources by *Phineas*, he would be liable at law to account for to the administrator of *Aaron's* estate, and the guardian of *Nancy's*, and we would presume, in the absence of proof, that he did so account.

The first question that occurs in examining this case is, why was the suit brought in chancery? The bill seeks no discovery, and if *Nancy Wilson* is entitled to the land in question as heir of her father, no obstacle appears to her recovery of it at law, unless, indeed, the voluntary surrender by her father of his deed for destruction, and that, too, for a fraudulent purpose, estops him and his heir from proving the contents of that deed by parol, to give effect to it in a suit at law; but, if so, surely chancery should give no relief on that ground. See Greenl. Ev. vol. 1, p. 386, note 1. On this point, however, we make no decision, nor do we upon any other point in the case, save one, which is decisive. We think the evidence does not show that a deed was ever delivered for the land from *Phineas McCray* to *Aaron;* and if not, no title ever vested in *Aaron*, and he could transmit none to his heir. The deed was probably not delivered at the time it was acknowledged, for it was after that in the custody of *Phineas* at his own house. Soon after came the slander suit, and then *Aaron* did not wish it delivered lest the land should thereby become subject to a judgment against him. Soon after this it was destroyed by *Phineas*, he then, it would seem, having it still in his possession. *Aaron* (says a witness) once had the deed in his hands looking at it, but did not take it away. This does not show that it was ever in his possession, or under his control, with the

consent of *Phineas*, for the purpose of vesting in him the title to the land; and this should be shown, or made inferable from circumstances, to establish a delivery.

*Per Curiam.*—The decree is affirmed with costs.

*J. Ryman*, *J. Rariden*, and *J. S. Reid*, for the appellants.

*J. S. Newman* and *S. W. Parker*, for the appellees.